**Reversed and Remanded and Opinion Filed October 15, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-01134-CV**

**ALBANIAN-AMERICAN CULTURAL CENTER, INC. AND XHAMIA SHQIPTARE DFW, INC., Appellants**
**V.**
**STRUGE CULTURAL CENTER, INC., Appellee**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-23-03905-E**

## MEMORANDUM OPINION

Before Justices Molberg, Breedlove, and Kennedy
Opinion by Justice Breedlove

This is a restricted appeal of a default judgment taken by appellee Struge Cultural Center, Inc. ("Struge"). Appellants Albanian-American Cultural Center, Inc. ("AACC") and Xhamia Shqiptare DFW, Inc. ("XSDFW") argue that the trial court erred in granting default judgment because (1) service was defective; (2) the record does not support the awards provided; and (3) the court awarded unliquidated damages without evidentiary support. We conclude that service was not defective, but we also conclude that Struge's pleadings fail to support a default judgment on any of its causes of action. Accordingly, we reverse and remand.

# BACKGROUND

Struge and AACC are non-profit corporations who entered into an undated, written "Agreement Between Albanian American Cultural Center, Inc. and Struge Cultural Center, Inc. for the building of New Albanian Mosque," (the "Agreement") which Struge attached as an exhibit to its Original Petition. Pursuant to the Agreement, AACC agreed to donate $730,000 for a land purchase and $75,000 to break ground on a new mosque. Struge then agreed to transfer property it owned in Bedford, Texas (the "Bedford Property") to AACC. The Agreement provides that AACC will replot the Bedford Property to separate a building located on the property from a remaining three acres of land, with the intent of selling the building located on the Bedford Property to pay for the mosque. After the sale and disposition of funds, Struge was to be dissolved, and a new non-profit corporation, XSDFW, was to be formed for the management of the mosque. XSDFW was to be comprised of members of the DFW Albanian community. Struge was also to donate its current total funds, estimated at $100,000, to XSDFW to cover the new non-profit's first year operating expenses. Struge executed the transfer of the Bedford Property on June 25, 2021. The same day, AACC executed a transfer of a separate property in Lewisville, Texas (the "Lewisville Property") to XSDFW.

Cengis Lusho signed the Agreement on behalf of Struge as its President and also executed the deed transferring the Bedford Property on Struge's behalf. Lusho was also one of the three original directors on the board of XSDFW, as well as its

registered agent. According to AACC and XSDFW, Lusho lost an election for President of XSDFW in early 2023 and attempted to thwart efforts by the new leadership of XSDFW to fulfill the Agreement and complete the construction of the mosque. Relations between the parties broke down, leading Struge to file suit against AACC and XSDFW on June 22, 2023. In its petition, Struge requested a declaratory judgment, asserted a claim in trespass to try title, and sought rescission of the Agreement on grounds that it was void for want of consideration, void because it was fraudulently induced to enter the Agreement, or the Agreement should be rescinded because it was breached.

On June 26, 2023, service on AACC was accepted by Leo Priolo, Jr., AACC's registered agent. Two days later, service on XSDFW was accepted by Lusho, in his capacity as registered agent for XSDFW. The returns of service for both defendants were filed with the trial court. After neither AACC nor XSDFW made an appearance, Struge moved for default judgment on August 22, 2023, and the trial court granted the motion and entered its judgment on August 30, 2023. In its judgment, the trial court found that Struge's causes of action were liquidated and proven by its petition and declared that the deed transferring the Bedford Property was void. The trial court also found that Struge was entitled to

> the return of: (a) the $100,000.00 in funds it transferred to AACC under the Agreement, (b) $150,000.00 in proceeds received by the AACC under the [Coca-Cola] Contract per the Agreement, and (c) its thirty percent (30%) interest in the revenues of the [Coca-Cola] Contract that

was transferred to the AACC under the Agreement from the date of this judgment forward.

The trial court also found that Struge was entitled to reasonable attorney's fees and expenses, costs of court, interest, and conditional appellate fees. The judgment did not address the disposition of the Lewisville Property. AACC and XSDFW filed this restricted appeal on October 31, 2023.

## DISCUSSION

To prevail on their restricted appeal, AACC and XSDFW must establish: (1) they filed their notice of restricted appeal within six months after the judgment was signed; (2) they were parties to the underlying suit; (3) they did not participate in the hearing that resulted in the judgment complained of and did not timely file any post-judgment motions or request findings of fact and conclusions of law; and (4) error is apparent on the face of the record. *Lawton Candle, LLC v. BG Pers., LP*, 690 S.W.3d 122, 124–25 (Tex. App.—Dallas 2024, no pet.) (citing *Greystar, LLC v. Adams*, 426 S.W.3d 861, 866 (Tex. App.—Dallas 2014, no pet.) (internal citations omitted)). For purposes of a restricted appeal, the record consists of all papers filed in the appeal, including the reporter's record. *Id.* at 125. The only element of a restricted appeal that is in question is whether AACC and XSDFW have shown error on the face of the record. *See id.*

**Issue 1: Service of Process**

We first address whether AACC and XSDFW were properly served. AACC and XSDFW argue that service was defective because Struge failed to provide notice. Specifically, the appellants argue that service was defective as to XSDFW because it was withheld from the XSDFW board by Lusho, its registered agent, due to a conflict of interest. The appellants also argue that service was defective as to AACC because it was served upon Prioli, the then registered agent of AACC, who did not notify the board of AACC of service and instead buried notice of the lawsuit within a stack of paperwork he tendered to AACC along with his resignation as CPA on September 14, 2023, two weeks after the trial court granted default judgment. Struge responds that the record demonstrates strict compliance with the requirements of service, and that default judgment was proper because service was made on the parties' registered agents.

In a restricted appeal, a party can establish error on the face of the record by demonstrating that the record fails to affirmatively show strict compliance with the rules of civil procedure governing issuance, service, and return of citation. *See Prado v. Nichols*, No. 05-20-01092-CV, 2022 WL 574845, at *2 (Tex. App.—Dallas Feb. 25, 2022, no pet.) (mem. op.) (citing *Mandel v. Lewisville Indep. Sch. Dist.*, 445 S.W.3d 469, 474 (Tex. App.—Fort Worth 2014, pet. denied)). In contrast to the usual rule that all presumptions—including valid issuance, service, and return of citation—will be made in support of a judgment, no such presumptions apply to a

direct attack on a default judgment. *See Primate Constr. Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994). If the record does not show strict compliance with the rules governing citation and return of service, then service is invalid and in personam jurisdiction cannot be established. See *Prado*, 2022 WL 574845, at *2 (citing *TAC Americas, Inc. v. Boothe*, 94 S.W.3d 315, 319 (Tex. App.—Austin 2002, no pet.)). Moreover, virtually any deviation from these rules is sufficient to set aside a default judgment in a restricted appeal. *Id.* Whether service was in strict compliance with the rules is a question of law we review de novo. *U.S. Bank Tr., N.A. v. AJ & SAL Enters., LLC*, No. 05-20-00346-CV, 2021 WL 1712213, at *2 (Tex. App.—Dallas Apr. 30, 2021, no pet.) (mem. op.).

A business entity is not a person capable of accepting process on its own behalf and therefore must be served through an agent. *Id.* (internal citations omitted). Service may be made on the entity's registered agent, president, or any vice president. TEX. BUS. ORGS. CODE ANN. §§ 5.201(b), 5.255(1); *see also id.* § 5.201(b)(1) (providing that a registered agent is an agent who is authorized to receive service for the entity).

The parties do not dispute that registered agents accepted service on behalf of both AACC and XSDFW. *See id.* § 5.201(b)(1). AACC and XSDFW also do not argue that the affidavits of service on file with the court are defective, and we conclude the affidavits to be a sufficient return of service. *See* TEX. R. CIV. P. 107. Instead, appellants assert that service was defective because the registered agents

–6–

who received service never notified the appellants they had been served, and that Lusho's clear conflict of interest in the litigation further made him an inappropriate recipient of XSDFW's service.

AACC and XSDFW argue that "service should not be made on a registered agent with a conflict of interest that is known, actually or constructively, by the plaintiff and its counsel." Appellants do not point to any law or statute, and indeed this Court can find none, that stands for this proposition or for the proposition that process served in strict compliance with the rules of civil procedure may nonetheless be held invalid if the registered agent who is served fails to notify the entity on whose behalf service is accepted. Indeed, such a rule would have absurd results, allowing defendants to buy themselves more time to respond to litigation by instructing their agents to delay providing them with notice.[1]

As agents for receiving process on AACC's and XSDFW's behalf, Lusho's and Prioli's receipt of the process gave AACC and XSDFW constructive notice of the lawsuit; therefore, AACC and XSDFW were properly served. *See Huffman Asset Mgmt., LLC v. Colter*, No. 05-22-00779-CV, 2023 WL 7319054, at *6 (Tex. App.—Dallas Nov. 7, 2023, pet. denied) (mem. op.) (holding that as the agent for receiving

---

[1] Further, an adoption of such a rule is precluded by case law interpreting Texas Rule of Civil Procedure 21a, providing for constructive notice in cases where the defendant did not actually receive service but the record contains circumstantial evidence demonstrating that the defendant (or its agent) nonetheless had knowledge of attempted service. *See, e.g., Abuzaid v. Anani, LLC*, No. 05-16-00667-CV, 2017 WL 5590194, at *4 (Tex. App.—Dallas Nov. 21, 2017, no pet.) (mem. op.) (holding that constructive notice may be established if the serving party presented evidence that the intended recipient engaged in instances of selective acceptance or refusal of service of documents) (citing *Etheredge v. Hidden Valley Airpark Ass'n*, 169 S.W.3d 378, 382 (Tex. App.–Fort Worth 2005, pet. denied)).

–7–

process, the Secretary of State's receipt of process gave the entity constructive notice of the lawsuit and that service was proper, even when the entity alleged it never received actual notice from the agent). The appellants may have preferred that Struge serve someone other than their registered agents, but the law does not require it to do so. AACC and XSDFW selected their registered agents, and Struge was entitled to rely on those selections for purposes of service of process. *See Interaction, Inc./State v. State/Interaction, Inc.*, 17 S.W.3d 775, 780 (Tex. App.—Austin 2000, pet. denied) (holding that service on one valid agent was proper when served in compliance with the rules of civil procedure even when entity asserted that the plaintiff should have served a different agent) (citing *TXXN, Inc. v. D/FW Steel Co.*, 632 S.W.2d 706, 708 (Tex. App.—Fort Worth 1982, no writ)). The onus was on AACC and XSDFW to maintain an updated registered agent and to make changes to its registered agent whenever necessary, and Struge is not responsible for the consequences of the appellants' failure to do so. *See id.* ("Interaction's own failure to comply with these statutory requirements deprived Interaction of notice of the pending suit. Therefore, Interaction is precluded from arguing that it was denied due process."). We overrule AACC's and XSDFW's first issue.

**Issue 2: Sufficiency of the Pleadings**

We next consider whether the pleadings were sufficient to sustain a default judgment. AACC and XSDFW argue that the pleadings in this case do not support the default judgment because: (1) the Declaratory Judgment Act does not provide a

cause of action for determining title disputes; (2) the trespass to try title action is not supported by the facts; and (3) the record does not support any of Struge's contract theories.[2]

In the no-answer default judgment context, the failure to file an answer operates as an admission of the material facts alleged in that petition except as to unliquidated damages. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). If the facts set out in the petition allege a cause of action, a default judgment conclusively establishes the defendant's liability. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984). Consequently, the defendant against whom a no-answer default judgment is rendered is precluded from challenging the sufficiency of the evidence supporting his liability. *See Heine*, 835 S.W.2d at 83; *Morgan*, 675 S.W.2d at 731.

A no-answer default judgment is properly granted if (1) the plaintiff files a petition that states a cause of action, (2) the petition invokes the trial court's jurisdiction, (3) the petition gives fair notice to the defendant, and (4) the petition does not disclose any invalidity of the claim on its face. *See Stoner v. Thompson*, 578 S.W.2d 679, 684 (Tex. 1979). An appellate court may examine the pleadings to determine whether they sufficiently plead a cause of action to support the judgment because if no liability exists against the defaulting defendant as a matter of law on

---

[2] The trial court's judgment does not include awards for Struge's fraud and exemplary damages claims. Struge does not challenge these rulings on appeal, and we do not address them. *See* TEX. R. APP. P. 47.4.

the facts alleged in the petition, then the fact that he has defaulted by failing to file an answer cannot create liability. See *Quality Hardwoods, Inc. v. Midwest Hardwood Corp.*, No. 2-05-311-CV, 2007 WL 1879797, at *2–3 (Tex. App.—Fort Worth June 28, 2007, no pet.) (citing *First Dallas Petroleum, Inc. v. Hawkins*, 727 S.W.2d 640, 645 (Tex. App.—Dallas 1987, no writ)).

## A.     Declaratory Judgment

AACC and XSDFW assert that a claim under the Texas Declaratory Judgment Act (TDJA), TEX. CIV. PRAC. & REM. CODE ANN. § 37.001 *et seq.*, is not a proper cause of action for resolving title disputes, and that the trial court erred in granting title to the Bedford Property to Struge on that basis. *See Armstrong DLO Props. LLC v. Furniss*, No. 05-13-01581-CV, 2015 WL 265653, at *15 (Tex. App.—Dallas, Jan. 21, 2015, no pet.) (mem. op.) (holding that declaratory judgment is an inappropriate vehicle for determining title disputes) (quoting *Coinmach Corp. v. Aspenwood Apartments Corp.*, 417 S.W.3d 909, 926 (Tex. 2013) (internal quotations and citations omitted)).  Struge argues that the default judgment does not indicate that the trial court granted this relief *solely* under the TDJA, so there is no error on the face of the record. However, the judgment, provides:

> The Court finds and declares that pursuant to the Uniform Declaratory Judgment Act, that the Deed, which conveys the Bedford Property to the AACC, is void and further declares that Plaintiff is the sole owner of the Bedford Property, holding such title free and clear.

While the remainder of the default judgment may be premised on the other causes of action asserted, trial court's order explicitly states the trial court granted the requested relief regarding the Bedford Property pursuant to Struge's declaratory judgment cause of action.

Because the trial court erred in granting declaratory relief on the title dispute, we sustain AACC and XSDFW's second issue as it relates to the disposition of the Bedford Property. *See id.*; *see also Lile v. Smith*, 291 S.W.3d 75, 78 (Tex. App.—Texarkana 2009, no pet.) (reversing default judgment granted pursuant to the TDJA when the dispute sounded solely in trespass to try title).

## B. Trespass to Try Title

Struge argues that even if the judgment granting relief regarding the Bedford Property pursuant to the TDJA was in error, there is nothing showing that the error led to the rendition of an improper judgment as required under TEX. R. APP. P. 44.1. To that end, Struge relies on *Gordon v. W. Hous. Trees, Ltd.*, 352 S.W.3d 32, 38 fn. 1 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Sw. Guar. Trust Co. v. Hardy Road 13.4 Joint Venture*, 981 S.W.2d 951, 957 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)), which held that "[w]hen an action for declaratory relief and suit to quiet title are based on the same facts and request similar relief, they are both treated as one suit to quiet title." By contrast, AACC and XSDFW argue that there is no basis for this Court to hold the trial court's grant of declaratory judgment was also sufficient to satisfy a trespass to try title claim; further, AACC and XSDFW

–11–

assert that even if we were to treat the judgment as granting relief under the trespass to try title claim, the trial court still erred because Struge's pleadings do not support default judgment on a trespass to try title claim.

Because the issue is dispositive, we turn first to AACC and XSDFW's argument that Struge's pleadings do not support default judgment on a trespass to try title claim. As an initial matter, the parties dispute the requirements of trespass to try title pleadings. Specifically, AACC and XSDFW assert that Struge's pleadings fail because they do not contain an assertion of "superior title," while Struge maintains that such an assertion is not required under recent supreme court precedent.

In *Stelly v. DeLoach*, the supreme court held:

> [a] trespass-to-try-title action requires the petition to allege: (1) the parties' real names and residences; (2) a legally sufficient description of the premises; (3) the plaintiff's claimed interest; (4) that plaintiff possesses the premises or is entitled to possession; (5) that the defendant unlawfully entered and dispossessed the plaintiff of the premises and withholds possession; and (6) a prayer for relief.

644 S.W.3d 657, 659 (Tex. 2022) (citing TEX. R. CIV. P. 783(a)–(e), (g); *Brumley v. McDuff*, 616 S.W.3d 826, 832 (Tex. 2021). "[T]hese pleading requirements [are] 'detailed,' but they are not arduous." *Brumley*, 616 S.W.3d at 832.

Additionally, the supreme court held in *Brumley* that

> [I]n a trespass-to-try-title action, a plaintiff may prove legal title by establishing: (1) a regular chain of title of conveyances from the sovereign to the plaintiff; (2) a superior title to that of the defendant out

–12–

of a common source; (3) title by limitations (i.e., adverse possession); or (4) possession that has not been abandoned.

*Id.* AACC and XSDFW derives its "superior title" requirement from these elements in *Brumley*. However, AACC and XSDFW erroneously conflate the party's burden to plead with their burden to prove—*Brumley* stands for the proposition that "superior title" is how one proves entitlement to relief in a trespass to try title claim, not what one must plead in order to satisfy Texas's fair notice pleading standards. *See id.*

Although we agree with Struge that it was not required to plead "superior title" in order to satisfy its pleading obligations, the procedural posture of this case imposes additional requirements in order for Struge's default judgment to be sustained. *See Stoner*, 578 S.W.2d at 684. As discussed in more detail above, to support a default judgment, the pleadings must state a cause of action and must not affirmatively disclose the invalidity of the claim. *See id*. Thus we consider whether Struge's pleadings satisfy these requirements under the trespass to try title standards set forth in *Brumley* and *Stelly*.[3]

In its Original Petition, Struge pled the following with regard to its trespass to try title cause of action:

> Plaintiff seeks an order of this Court clearing the title to the Bedford Property of the cloud cast by Defendants' respective deeds and quieting title to the Bedford Property that is the subject matter of this lawsuit.

---

[3] The parties do not dispute elements one, two, three, or six, so we do not address them. *See* TEX. R. APP. P. 47.1.

Plaintiff has named the parties and their principal address, described the Bedford Property with sufficient certainty legal description and also by attaching the relevant deeds, asserts its interest as a fee simple in such property, that it was in possession of the Bedford Property until unlawfully dispossessed by Defendants of the Bedford Property, on or about June 25, 2021, and prays for the relief of the deeds transferring the Bedford Property to AACC and transferring the Lewisville Property from the AACC to Xhamia each be found void, such that Struge is the lawful owner of the Bedford Property as determined by the Court and that the Lewisville Property is owned by the AACC, subject to the Agreement.

Struge's petition plainly includes allegations that it is entitled to possession of the Bedford Property and that AACC and XSDFW unlawfully dispossessed Struge of the premises, as required under *Brumley* and *Stelly*. However, considering the procedural posture of this case, merely pleading those allegations are insufficient to entitle it to default judgment if the pleadings affirmatively disclose the invalidity of its claim. *See Stoner*, 578 S.W.2d at 684.

Struge asserted that AACC and XSDFW unlawfully disposed Struge of the Bedford Property by fraud and asked that the trial court find the deed transferring title to the Bedford Property void under that basis. In support of its petition, Struge attached a copy of the deed through which it transferred title to the Property to XSDFW. Struge does not assert that it presently has a right to possession of the Property.

"A deed is voidable if it is procured by fraud." *Bills v. Mills*, No. 05-23-00413-CV, 2024 WL 3897462, at *2 (Tex. App.—Dallas Aug. 22, 2024, no pet. h.) (mem. op.). However, *voidable* is not the same as *void*. *See Wood v. HSBC Bank USA, N.A.*,

–14–

505 S.W.3d 542, 547 (Tex. 2016). "Under the common law, a "void" act "is one which is entirely null, not binding on either party and not susceptible of ratification."" *Id.* (quoting *Cummings v. Powell*, 8 Tex. 80, 85 (1852)). In comparison, "a voidable act is one which is obligatory upon others until disaffirmed by the party with whom it originated and which may be subsequently ratified or confirmed." *Id.* (quoting *Cummings*, 8 Tex. at 85).

The trial court did not grant relief on the basis of Struge's fraud claim, and Struge does not bring a cross-appeal on that basis. The deed upon which Struge's trespass to try title claim is based is one that Struge asserts is voidable, not void, and therefore remains legally effective until set aside. *See Bills*, 2024 WL 3897462, at *2 (citing *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007) (per curiam) ("Deeds obtained by fraud are voidable rather than void, and remain effective until set aside.")). Because the trial court did not grant relief regarding the Bedford Property on the basis that it was procured by fraud and did not set aside the deed, it remains legally effective and XSDFW is legally entitled to possession of the Property. *See id.* Therefore, Struge's pleadings affirmatively disclose the invalidity of the trespass to try title claim because by its own assertions it cannot satisfy the fourth or fifth elements of its pleading obligations. *See Stoner*, 578 S.W.2d at 684. [4] Although the deed, if set aside, would form a basis upon which Struge could file a

---

[4] Because Struge does not bring a cross-appeal on its fraud claim, we express no opinion as to whether Struge would have been entitled to relief regarding the Bedford Property on its fraud claim and instead look only to the sufficiency of the trespass to try title pleadings. *See* TEX. R. APP. P. 25.1.

trespass to try title claim in the event that XSDFW continued to unlawfully possess the Property after Struge obtained the legal right to possession, such an action is premature because Struge does not presently have any legal right to possess the Property. *See Bills*, 2024 WL 3897462, at *2; *Brumley*, 616 S.W.3d at 832. Because the pleadings cannot support a default judgment on Struge's trespass to try title claim, we sustain AACC and XSDFW's issue with regard to that claim.

## C. Contract

AACC and XSDFW argue that the monetary awards in the declaratory judgment based on breach of the Agreement were not supported by the record under any of Struge's contract theories. Struge does not respond to the appellants' specific arguments regarding the invalidity of its contract claims, but instead, asserts that their contract arguments are actually legal and factual sufficiency challenges, which are barred in the context of a no-answer default judgment on liability.

As discussed above, a petition will not support a default judgment if the petition fails to state a cause of action, give fair notice of the claims, or shows the claim is invalid. *See Elite Door & Trim, Inc. v. Tapia*, 355 S.W.3d 757, 766 (Tex. App.—Dallas 2011, no pet.); *see also Stoner*, 578 S.W.2d at 684. AACC and XSDFW argue Struge failed to give fair notice of its contract claims and that the petition shows that Struge's contract claims are invalid.

The Texas pleading rules only require a pleader to provide fair notice of the claim and the relief sought such that the opposing party can prepare a defense. *In re*

*Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). Pleadings give fair notice when "an opposing attorney of reasonable competence, with the pleadings before him, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant." TEX. R. CIV. P. 45(b), 47(a) (a pleading "shall contain . . . a short statement of the cause of action sufficient to give fair notice of the claim involved"); *Myan Mgmt. Grp., L.L.C. v. Adam Sparks Fam. Revocable Tr.*, 292 S.W.3d 750, 754 (Tex. App.—Dallas 2009, no pet.). When, as here, no special exceptions are filed, we construe pleadings liberally in favor of the pleader. *Elite Door & Trim Inc.*, 355 S.W.3d at 766 (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000)).

Struge pleaded claims against AACC and XSDFW for breach of contract.[5] The elements of a breach of contract claim are (a) the existence of a valid contract; (b) performance or tendered performance; (c) breach of the contract; and (d) damages resulting from the breach. *Id.* (citing *Myan Mgmt. Grp., L.L.C.*, 292 S.W.3d at 754). Struge's petition alleged Struge entered into a contract with AACC and XSDFW to build a mosque and attached a copy of the contract as an exhibit to the petition. Struge also asserted that it transferred the Bedford Property to AACC and approximately $100,000 to XSDFW as required under the contract. Finally, Struge alleged that AACC and XSDFW breached the Agreement in multiple ways

---

[5] Struge argues for the first time on appeal that the contract was unenforceable due to fraud in the inducement and/or a lack of consideration, but these issues were not presented to the trial court and are not preserved. *See* TEX. R. APP. P. 33.1.

–17–

and that it was damaged as a result of those breaches. We conclude the petition gives fair and adequate notice of the facts upon which Struge bases its breach of contract claim. *See id.* at 767.

We next consider whether the petition shows that Struge's contract claims are invalid. AACC and XSDFW raise the issue of whether the "breaches" identified by Struge in its petition actually constitute breaches of the contract as a matter of law. Attachments to a petition that conflict with allegations in a petition may support reversal of a default judgment. *AVS Builders, LLC v. Galpin*, No. 03-22-00457-CV, 2023 WL 5058042, at *1 (Tex. App.—Austin Aug. 9, 2023, no pet.) (mem. op.). For example, where an agreement attached to a petition differs from the agreement described in the petition, the exhibit governs, and the pleadings will not support a default judgment. *Id.* (citing *Cecil v. Hydorn*, 725 S.W.2d 781, 782 (Tex. App.—San Antonio 1987, no writ) (petition alleged employment agreement, but attached exhibit did not mention defendant or contain her signature)); *see also Rowsey v. Matetich*, No. 03-08-00727-CV, 2010 WL 3191775, at *8 (Tex. App.—Austin Aug. 12, 2010, no pet.) (mem. op.) (citing *Cecil*, 725 S.W.2d at 782). Where the pleadings are sufficient to provide fair notice but are in conflict with the written instruments attached to the petition, "such declarations are mere conclusions of the pleader and must yield to the terms and conditions of the written instruments." *Cecil*, 725 S.W.2d at 782 (citing *Davis v. Nichols*, 124 S.W.2d 881 (Tex. Civ. App.—Dallas 1939, no writ)). Struge alleged the following breaches in its petition:

1. XSDFW on several occasions refused to allow access of members of Struge to the Bedford Property for worship.

2. The Budget Committees are no longer operating consistently with the Agreement.

3. The funds that Struge transferred to the AACC have not been accounted for properly.

4. The Struge representation on various committees has been largely cut off.

5. The Lewisville Property has been cordoned off from being an asset of what would have been a merged entity under the AACC, and XSDFW has begun operating in violation of its Bylaws regarding the Lewisville Property over which Struge was to have an interest as part of the Agreement.

We must determine if these allegations, taken as true, would sustain a cause of action for breach of contract. *See AVS Builders*, 2023 WL 5058042, at *1.

As to the first alleged breach, the Agreement only specifies that "[a]ll religious services will be held in Bedford during the development phase." The Agreement does not prohibit XSDFW from limiting access to the Bedford Property or require that Struge be allowed to attend all worship services held on the Property; the Agreement merely identifies the location of worship services during development. As to the second alleged breach, the Agreement does not address "Budget Committees," only a "Budgeting Special Committee," and while the Agreement outlines that the AACC Board would be allowed to create other committees, including budget committees, the Agreement does not dictate how those committees should operate. The third alleged breach does not have a basis in the Agreement. The

–19–

Agreement stipulates Struge was to donate its current funds to XSDFW, not AACC, and that the funds would be used by XSDFW as operating funds for the first year. To the extent that the reference to AACC was inadvertent and that Struge actually intended to complain about the funds it donated to XSDFW, this allegation also does not demonstrate a breach because the Agreement does not specify how the funds should be "accounted for," or whether XSDFW was required to provide an accounting to Struge of how it used Struge's donation at all. The fourth and fifth alleged breaches also have no basis in the Agreement. The Agreement does not require that members of Struge be appointed to committees of either XSDFW or AACC; therefore, XDSFW and AACC are not in breach of the Agreement by reducing or even eliminating the number of Struge representatives on their respective committees. Likewise, the Lewisville Property, including its ownership, management, or transfer, is not mentioned at all in the Agreement, so the parties have not breached the Agreement regarding the Lewisville Property even if XSDFW is operating in violation of its own bylaws with regard to the property.

The Agreement as described by Struge conflicts with the terms of the Agreement attached to the petition. Because none of the alleged breaches, taken as true, actually constitute breaches of the Agreement under its plain terms, Struge's pleadings fail to state a valid breach of contract claim and the petition cannot support a default judgment on the grounds of breach of contract. *See id; see also Stoner*, 578

S.W.2d at 679. We sustain XSDFW's and AACC's second issue as to Struge's contract claims.

Because none of the causes of action pleaded by Struge can support a default judgment, the trial court erred in granting default judgment. Therefore, we need not address the appellants' remaining issues on the award of damages. *See* TEX. R. APP. P. 47.4.

## CONCLUSION

We reverse the trial court's judgment granting default judgment and remand to the trial court for further proceedings consistent with this opinion.

231134f.p05

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE

–21–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ALBANIAN-AMERICAN
CULTURAL CENTER, INC. AND
XHAMIA SHQIPTARE DFW, INC.,
Appellants

No. 05-23-01134-CV     V.

STRUGE CULTURAL CENTER,
INC., Appellee

On Appeal from the County Court at
Law No. 5, Dallas County, Texas
Trial Court Cause No. CC-23-03905-
E.
Opinion delivered by Justice
Breedlove. Justices Molberg and
Kennedy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants ALBANIAN-AMERICAN CULTURAL CENTER, INC. AND XHAMIA SHQIPTARE DFW, INC. recover their costs of this appeal from appellee STRUGE CULTURAL CENTER, INC.

Judgment entered this 15th day of October, 2024.